# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHEILA D. MONTGOMERY, | ) | 1:10cv01473 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
|  | ) | |

## BACKGROUND

Plaintiff Sheila D. Montgomery ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on February 9, 2006, alleging disability since December 12, 2000, due to back problems, diabetes, high blood pressure, leg and foot pain, arthritis and sleeplessness. AR 109-113, 126-133. After her application was denied initially and on

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 57-64, 65-69, 86.  ALJ Michael J. Haubner held a hearing on January 8, 2008, and issued a decision denying benefits on April 23, 2008.  AR 12-21, 22-55.  The Appeals Council denied review on June 25, 2010.  AR 2-4.

Hearing Testimony

ALJ Haubner held a hearing on January 8, 2008, in Fresno, California.  Plaintiff appeared with her attorney, Jeffrey Milam.  Vocational expert ("VE") Cheryl Chandler also appeared and testified.  AR 22.

Plaintiff testified that she was born in 1959 and completed the seventh grade.  She did not get her GED and had no further training.  AR 28.  In 1995 and 1996, Plaintiff worked with mentally handicapped adults and in 1999, she provided home health care for her father.  AR 29.  She last looked for work in 2000.  AR 30.

Plaintiff lives with her husband, who receives disability for both a physical and mental impairment.  AR 30.  Plaintiff has a driver's license without restrictions and she drives about once a week.  AR 30-31.  Plaintiff can brush her teeth, bathe herself and put on make-up, but cannot get dressed without help.  AR 31-32.  Her husband helps her put her bra and shirt on.  AR 32.  Plaintiff also prepares meals three times a week and does simple meal preparation two to three times a day.  AR 32.  She cleans up after herself or does dishes once a day, though she has to sit down while she clean them.  AR 32, 50.  Plaintiff feeds her three dogs, lets them outside and gives them water.  AR 33.  She does not do yard work or take out the trash.  AR 33.  Plaintiff does not make her bed but changes the sheets once every couple of weeks.  AR 33.  She does laundry once a day and has been grocery shopping twice in the last six months.  AR 34.  Plaintiff talks on the phone three times a day and leaves her house maybe twice a week.  AR 35.  She is able to balance her checking account.  Plaintiff estimated that she watches television one to two hours a day.  AR 36.

Plaintiff has stopped swimming, walking, playing with her grandchildren and cleaning her house because of her condition.  AR 49-50.

Plaintiff testified that she has a history of low back pain, diabetes, high blood pressure, neuropathy and degenerative disc disease. She has pain and tingling in both legs. AR 37. Plaintiff's neuropathy affects her legs and hands, though she hasn't had any treatment or testing for her hands. AR 50-51. She also gets cramps in her legs everyday that come and go, with an average of two a day lasting for five minutes. AR 51, 53.

Plaintiff thought that she could lift and carry five to ten pounds, stand for ten minutes at a time and sit for ten minutes at a time. AR 37. She thought that she could walk for about five minutes. AR 38. Plaintiff uses a cane every time she walks, even in the house. AR 40. During the day, she needs to lay down one to two hours. Plaintiff also has trouble concentrating and thought that she could focus on one thing for about ten minutes. AR 38. She thought that she could occasionally bend. AR 39.

Plaintiff is five feet, eight inches tall and weighs 240 pounds. She is fully compliant with her treatment and medications. Her doctors have told her to lose weight and put her on a specific diet, though she follows the diet only eighty percent of the time. AR 39-40. She also explained that even though she told her doctor that she needs to lay down, her doctor told her to keep active because of her diabetes. AR 49.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift and carry ten pounds occasionally and ten pounds frequently. The VE testified that this person could perform Plaintiff's past work as a case aide or group home worker. This person could also perform the world of light and sedentary unskilled work. AR 42-43.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift twenty pounds occasionally and ten pounds frequently, and needed to avoid concentrated exposure to heights and uneven terrain. The VE testified that this person could perform Plaintiff's past work as a case aid, and slightly less than the full world of light and unskilled sedentary work. Such positions included food prep worker, cafeteria attendant and cashier. AR 43-44.

1    For the third hypothetical, the ALJ asked the VE to assume that this person could sit for
2 eight hours at a time and stand and walk for two to four hours at a time. This person could not
3 perform Plaintiff's past work but could perform the world of unskilled sedentary work. AR 44-
4 45.

5    For the final hypothetical, the ALJ asked the VE to assume that this person could lift and
6 carry five to ten pounds, stand for ten minutes at a time, sit for ten minutes at a time, and walk
7 for five minutes at a time. This person would have to lay down for one to two hours during the
8 day and could concentrate in ten minute increments. This person can occasionally stoop and
9 needs a cane to ambulate. The VE testified that this person could not perform any work. AR 45.

10   Plaintiff's attorney asked the VE to add the need for a cane to the third hypothetical. The
11 VE testified that this would not result in any erosion. AR 45-46.

12   If a cane requirement was added to the first or second hypothetical, the VE testified that
13 this would result in the elimination of light work. AR 47. Plaintiff could not perform her past
14 relevant work but could perform the world of unskilled sedentary work. AR 48.

15   Medical Record

16   An MRI of Plaintiff's lumbosacral spine performed on February 24, 2003, revealed mild
17 degenerative disc disease, L4/L5 posterior disc bulge and fissure of annulus fibrosus, and L5/S1
18 posterior disc protrusion measuring approximately 5mm. AR 242. An x-ray taken the same day
19 revealed limited range of motion, degenerative disc disease and mild dextroconvex scoliosis. AR
20 243.

21   On September 24, 2004, Plaintiff underwent a nerve conduction study of her bilateral
22 lower extremities. The findings were abnormal and compatible with peripheral neuropathy. AR
23 224-225.

24   A lumbar myelogram and lumbar CT scan performed on September 28, 2004, revealed
25 mild degenerative changes with minimal disc bulges at L4/5 and L5/S1, most pronounced at
26 L5/S1. There was no marked central canal stenosis. AR 223.

27   From to September 2004 to September 2005, Plaintiff saw Michael Wlasichuk, M.D., in
28 connection with her Workers' Compensation action. In September 2005, he diagnosed Plaintiff

with chronic lumbar pain syndrome, sclerosis, leg cramps and peripheral neuropathy. AR 177-179, 220-222.

On March 31, 2006, Plaintiff saw Juliane Tran, M.D., for a consultive examination. Plaintiff reported that she was injured at work in 2000 when she tried to lift a bookshelf weighing about 400-600 pounds. Since then, she has had back pain that radiates to the left leg and causes numbness. The pain is aggravated with sitting, standing, walking and bending over and alleviated somewhat with laying down. Plaintiff was also told that she had peripheral neuropathy. She tried a TENS unit without relief and physical therapy aggravated her back pain. Plaintiff "had to" do cooking, vacuuming, mopping and dishes, though she does these activities with pain. AR 181.

On examination, Plaintiff was mildly obese and walked with a slow gait. Plaintiff seemed uncomfortable with sitting and mobility, which was slow and fairly guarded. Plaintiff generally gave a fair effort with no painful behavior. Pulses were intact bilaterally and she could perform toe-heel walking slowly with some effort. Trendelenburg's test was positive in both legs but Faber's test and piriformis test were negative bilaterally. Plaintiff was not using an assistive device. Straight leg raising was negative without back pain or radicular symptoms. Plaintiff's right leg was one inch shorter than the left. She was fairly tender to palpation over the left L5-S1 sciatic notch. Muscle strength was 5/5 throughout, though Plaintiff had no reflexes in either ankle. Plaintiff also had decreased sensation in both feet in a nonspecific pattern. AR 182-184.

Dr. Tran diagnosed back pain, probably from lumbar dermatomal distribution, with no evidence of radiculopathy. Plaintiff's abnormal sensation in both feet was likely due to early peripheral neuropathy, but she did not currently have any problem with balance. Plaintiff had decreased mobility and decreased tolerance for sitting. Dr. Tran opined that Plaintiff could not lift more than twenty pounds occasionally and ten pounds frequently, sit for more than six hours or stand for more than six hours a day. Plaintiff did not need to alternate sitting and standing. Plaintiff "may be restricted with frequent climbing, balancing, working at heights, and frequent negotiating steps, stairs and uneven terrain, but not occasional." Plaintiff "may be restricted with

frequent bending, stooping, kneeling and crouching." She did not need an assistive device to ambulate. AR 184.

On April 21, 2006, Plaintiff underwent x-rays of her lumbosacral spine. The images revealed mild lumbar straightening, mild to moderate multilevel degenerative disc disease with associated endplate degenerative changes and disc ossification at L4/5. There were also mild facetal osteophytosis posterior elements at L5/S1. AR 185.

On May 11, 2006, State Agency physician I. Ocrant, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Ocrant opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for about six hours and sit for about six hours. Dr. Ocrant noted that these limitations were based on decreased range of motion in Plaintiff's lumbosacral spine and early mild diabetic neuropathy. Dr. Ocrant also noted that Plaintiff's pain medication was "very aggressive," though she is not cognitively impaired. The intensity of the alleged pain greatly exceeded the demonstrable pathology. Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl and had to avoid concentrated exposure to hazards and uneven terrain. AR 186-193.

Plaintiff saw Sharmee Kettler, D.O., on February 6, 2007. Plaintiff indicated that she was doing well and requested a gastric bypass evaluation. Plaintiff was still smoking and not working on her diet. Dr. Kettler diagnosed diabetes under poor control, increased lipids (improving), diabetic neuropathy, overweight and fatigue. AR 240.

Plaintiff returned to Dr. Kettler on April 16, 2007, and complained of leg, foot and back pain and requested a percocet refill. Plaintiff's knees were nontender and she stated her pain was more in her feet, calves and ankles. Dr. Kettler noted that a March 2007 knee x-ray revealed bilateral mild narrowing. AR 234.

On June 8, 2007, Plaintiff saw Dr. Kettler and complained of worsening leg cramps and weakness. Plaintiff also indicated that she wanted to start insulin. Dr. Kettler diagnosed diabetes, under poor control, chronic pain, diabetes mellitus neuropathy and a history of an incomplete cardio workup. AR 232.

Plaintiff returned to Dr. Kettler on July 9, 2007, for treatment of diabetes and pain, as well as medication refills. She also complained of leg cramps/pain, especially when trying to sleep. He diagnosed diabetes, under poor control, chronic pain, questionable restless leg syndrome and insomnia. AR 231.

Plaintiff saw Dr. Kettler on August 31, 2007, and complained of increasing low back pain and bilateral knee/leg pain since a fall in March 2007. He diagnosed diabetes, chronic pain, neuropathy, stable hypertension, insomnia and an increase in low back pain and bilateral knee pain. Her medications were refilled and he ordered x-rays. AR 230.

On December 14, 2007, Dr. Kettler wrote a letter "To Whom it May Concern." He stated that he had been treating Plaintiff since October 2006 and listed her diagnosis. He further explained that Plaintiff "states she cannot sit, stand or walk for more than 10 minutes due to exacerbation in her chronic pain despite regular use of pain medication." AR 226.

On January 18, 2008, Dr. Kettler completed a questionnaire in which he opined that Plaintiff could not perform work at even the sedentary level. Her primary impairment was diabetic neuropathy of her bilateral legs and feet. At one time, Plaintiff could sit for ten minutes and stand and/or walk for ten minutes. Over an eight-hour period, she could sit for two hours and stand and/or walk for two hours. Plaintiff would need to lay down or elevate her legs for one hour out of an eight-hour day. Dr. Kettler also noted that Plaintiff should not lift over ten pounds or do other heavy labor, including bending, stooping, squatting or crawling. She should also avoid potential fall situations due to poor balance. AR 241.

<u>ALJ's Findings</u>

The ALJ found that Plaintiff had the severe impairments of chronic lumbar disc syndrome, scoliosis, lumbar dermatomal distribution, degenerative disc disease, peripheral neuropathy and diabetes mellitus. AR 17. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally, ten pounds occasionally, stand, walk and sit for six hours in an eight-hour period, with occasional climbing, balancing, stooping, kneeling, crouching and crawling and no concentrated exposure to heights. With this RFC, the VE testified that Plaintiff could perform

7

her past relevant work as a case aid.  Alternatively, Plaintiff could perform the positions of fast food preparer, cafeteria attendant and cashier.  AR 21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (chronic lumbar disc syndrome, scoliosis, lumbar dermatomal distribution, degenerative disc disease, peripheral neuropathy and diabetes mellitus) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can perform her past relevant work; or in the alternative, (5) retains the RFC to perform a significant number of jobs in the national economy. AR 17-21.

Here, Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Kettler.

## DISCUSSION

A.   Analysis of Dr. Kettler's Opinion

Plaintiff believes that the ALJ improperly rejected Dr. Kettler's January 2008 opinion, which suggested that Plaintiff could not perform even sedentary work.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

      Here, the ALJ was presented with three opinions. Dr. Kettler opined that Plaintiff could perform less than sedentary work. State Agency physician Dr. Ocrant opined that Plaintiff could perform light work with restrictions, and consultive examiner Dr. Tran believed that Plaintiff could perform light work with fewer restrictions. The ALJ ultimately adopted the opinion of Dr. Ocrant.

      Dr. Kettler's opinion was contradicted by both Dr. Tran and Dr. Ocrant, who believed Plaintiff to be capable of light work. As set forth above, the ALJ was therefore required to set forth specific and legitimate reasons for rejecting his opinion. For the reasons that follow, the ALJ failed to do so.

      The ALJ first stated that the "fill-in the blanks form" was "somewhat inconsistent." Plaintiff takes issue with the ALJ's characterization of the questionnaire as a "fill-in the blanks form," and while it may not be a true fill-in the blanks form, the ALJ's analysis fails regardless of how he classifies the form.

      Insofar as the ALJ finds the questionnaire to be inconsistent, his reasoning is flawed. The ALJ concludes that Dr. Kettler's opinion is "somewhat inconsistent" because he states that Plaintiff cannot perform sedentary work, but also sets forth specific limitations. For example, the ALJ points to Dr. Kettler's statement that Plaintiff should not lift over ten pounds, can only stand, walk and sit for two hours, should lay down or elevate her legs for one hour and should avoid bending, stooping, squatting, crawling and potential fall situations. AR 20. Simply because Dr. Kettler believes that Plaintiff cannot perform sedentary work, yet indicates that Plaintiff can in fact perform some level of activity, does not render his opinion inconsistent where the specific abilities fall *below* sedentary work. Indeed, the ability to lift no more than 10 pounds, sit for up to ten minutes at a time and two hours total and stand and/or walk for ten minutes at a time and two hours total fall below the requirements for sedentary work. When

combined with Dr. Kettler's prohibitions against bending, stooping, squatting or crawling and the requirement that Plaintiff lay down and/or elevate her legs for one hour, it is clear that these limitations are consistent with Dr. Kettler's overall finding that Plaintiff could not perform sedentary work.

The ALJ next concludes that Dr. Kettler's opinion "lacks all signs, symptoms, or other basis (other than mentioning "studies")." AR 20.  Again, however, he is altogether incorrect. Dr. Kettler states that Plaintiff's primary impairment is diabetic neuropathy of her bilateral legs/feet.  When asked to set forth the objective findings upon which he based his opinion, Dr. Kettler listed (1) decreased sensation in the right foot to monofilament testing; (2) "decreased strength dorsiflexion R great toe 4/5;" and (3) nerve conduction studies pending.  AR 241. Contrary to the ALJ's conclusion, Dr. Kettler did set forth objective findings.  If the ALJ intended to compare and contrast the objective findings in further support of his conclusion, he did not do so and the Court will not guess as to his intentions.

Moreover, the ALJ cites "studies" in a way that suggests he questions either the veracity of Dr. Kettler or the results of the studies.  Although Dr. Kettler notes that the studies are pending, the ALJ does cite this as the basis for his doubt.  In fact, it is perplexing how the ALJ can question the basis for the neuropathy diagnosis and/or the nerve conduction studies when he earlier wholly accepts the diagnosis *and* the results of an earlier nerve conduction study.  AR 17, 20.

The ALJ's rejection therefore falls far below the "specific and legitimate" reasons required to reject Dr. Kettler's opinion.  Insofar as Defendant attempts to support the ALJ's conclusion by citing to inconsistent "objective test results and tests from consultive examining physicians," as well as the ALJ's subjective testimony analysis, the attempt fails.  As this Court has noted numerous times, a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

Similarly, although Defendant contends that the ALJ can adopt the State Agency physician over that of the treating source so long as it is not the sole basis for doing so, the Court

1  cannot undertake such an analysis where the ALJ improperly rejected the treating source in the
2  first instance.
3  B.    Remand
4       Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

     Here, the Court finds that the ALJ can address the error by conducting a new analysis of the medical opinions and obtaining additional medical evidence, if necessary.

**ORDER**

     Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Sheila D. Montgomery, and against Defendant Michael J. Astrue, Commissioner of Social Security.

     IT IS SO ORDERED.

     Dated:   **May 6, 2011**              **/s/ Dennis L. Beck**
                                                                UNITED STATES MAGISTRATE JUDGE